**IN THE UNITED STATES DISTRICT COURT**

**FOR THE DISTRICT OF OREGON**

| | |
|---|---|
| **STEPHANIE G.[1]**, | Case No. 6:23-cv-669-SI |
| Plaintiff, | **OPINION AND ORDER** |
| v. | |
| **MARTIN O'MALLEY**, Commissioner of Social Security, | |
| Defendant. | |

H. Peter Evans, EVANS & EVANS PC, 222 NE Park Plaza Drive, Suite 113, Vancouver, WA 98684. Of Attorneys for Plaintiff.

Natalie K. Wight, United States Attorney, and Kevin Danielson, Civil Division Chief, UNITED STATES ATTORNEY'S OFFICE, 1000 SW Third Avenue, Suite 600, Portland, OR 97204; John B. Drenning, Special Assistant United States Attorney, OFFICE OF THE GENERAL COUNSEL, Social Security Administration, 6401 Security Boulevard, Baltimore, MD 21235. Of Attorneys for Defendant.

**Michael H. Simon, District Judge.**

Stephanie G. (Plaintiff) seeks judicial review of the final decision of the Commissioner of

the Social Security Administration (Commissioner) denying her application for Supplemental

---

[1] In the interest of privacy, this Opinion and Order uses only the first name and the initial of the last name of the non-governmental party in this case. When applicable, this Opinion and Order uses the same designation for a non-governmental party's immediate family member.

Security Income (SSI). For the reasons discussed below, the Court affirms the decision of the Commissioner.

## STANDARD OF REVIEW

The decision of the administrative law judge (ALJ) is the final decision of the Commissioner in this case. The district court must affirm the ALJ's decision if it is based on the proper legal standards and the findings are supported by substantial evidence. 42 U.S.C. § 405(g); *see also Hammock v. Bowen*, 879 F.2d 498, 501 (9th Cir. 1989). "Substantial evidence" means "more than a mere scintilla" and requires only "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion." *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quoting *Consolidated Edison Co. v. NLRB*, 305 U.S. 197, 229 (1938)); *see also Bray v. Comm'r of Soc. Sec. Admin.*, 554 F.3d 1219, 1222 (9th Cir. 2009).

When the evidence is susceptible to more than one rational interpretation, the Court must uphold the ALJ's conclusion. *Burch v. Barnhart*, 400 F.3d 676, 679 (9th Cir. 2005). Variable interpretations of the evidence are insignificant if the ALJ's interpretation is a rational reading of the record, and this Court may not substitute its judgment for that of the ALJ. *See Batson v. Comm'r of Soc. Sec. Admin.*, 359 F.3d 1190, 1193, 1196 (9th Cir. 2004). "[A] reviewing court must consider the entire record as a whole and may not affirm simply by isolating a 'specific quantum of supporting evidence.'" *Orn v. Astrue*, 495 F.3d 625, 630 (9th Cir. 2007) (quoting *Robbins v. Soc. Sec. Admin.*, 466 F.3d 880, 882 (9th Cir. 2006)). A reviewing court, however, may not affirm the ALJ on a ground upon which the ALJ did not rely. *Id.*; *see also Bray*, 554 F.3d at 1226.

## BACKGROUND

### A. Plaintiff's Application

Plaintiff protectively filed an application for SSI on October 20, 2017, initially alleging

an onset date of August 1, 2016. AR 23, 146. Plaintiff was born in 1974 and was 42 years old on

the date the application was filed. AR 33. Plaintiff alleges that during the relevant period she was

unable to work due to pain associated with fibromyalgia, fatigue, and the inability to use her left

arm due to a labral tear. AR 28, 49, 50, 54, 58.

The agency denied Plaintiff's claims both initially and upon reconsideration. AR 102,

109. On July 13, 2018, Plaintiff requested a hearing before an ALJ. AR 112. Plaintiff and her

attorney appeared for a hearing before ALJ Weatherly on October 17, 2019. AR 42. At the

administrative hearing, Plaintiff amended her alleged onset date to October 20, 2017. AR 43.

Before her alleged disability, Plaintiff worked as a caregiver, AR 62, 81, but a vocational expert

(VE) testified at the hearing that the demands of this job exceed Plaintiff's RFC. AR 63. On

November 1, 2019, the ALJ issued a decision finding Plaintiff not disabled under

section 1614(a)(3)(A) of the Social Security Act. AR 23-35. Plaintiff requested the Appeals

Council review the ALJ's decision on November 18, 2019. AR 143-44.

On July 30, 2020, the Appeals Council denied Plaintiff's request for review. AR 11. On

June 21, 2021, Plaintiff filed a complaint with the Court to review the final decision of the

Commissioner under 42 U.S.C. § 405(g). AR 720. On April 4, 2022, based on the stipulation of

the parties, this Court ordered that the Commissioner's decision be reversed and remanded for

further administrative proceedings. AR 722-23. Pursuant to the Court's remand order, the

Appeals Council directed the ALJ to (1) further consider Plaintiff's maximum residual functional

capacity during the entire period at issues and provide rationale with specific references to

evidence of record, including medical opinion evidence pursuant to the provisions of 20 C.F.R.

§ 416.920(c), (2) further evaluate Plaintiff's alleged symptoms, and (3) obtain evidence from a

VE to clarify the effect of the assessed limitations on Plaintiff's occupational base. AR 727-28.

In compliance with the Appeal Council's instructions, the ALJ held a second hearing on

January 26, 2023. AR 658-77. VE Michelle Bishop testified. AR 672-77. On February 27, 2023,

the ALJ issued a new decision, again finding that Plaintiff was not disabled during the relevant

period and denying her benefits. AR 632-50. The Appeals Council denied Plaintiff's request for

review. AR 699. Accordingly, the ALJ's decision became the final agency decision from which

Plaintiff now seeks review.

## B.  The Sequential Analysis

A claimant is disabled if he or she is unable to "engage in any substantial gainful activity

by reason of any medically determinable physical or mental impairment which . . . has lasted or

can be expected to last for a continuous period of not less than 12 months." 42 U.S.C.

§ 423(d)(1)(A). "Social Security Regulations set out a five-step sequential process for

determining whether an applicant is disabled within the meaning of the Social Security Act."

*Keyser v. Comm'r Soc. Sec. Admin.*, 648 F.3d 721, 724 (9th Cir. 2011). Those five steps are:

> (1) Is the claimant presently working in a substantially gainful
> activity? (2) Is the claimant's impairment severe? (3) Does the
> impairment meet or equal one of a list of specific impairments
> described in the regulations? (4) Is the claimant able to perform
> any work that he or she has done in the past? and (5) Are there
> significant numbers of jobs in the national economy that the
> claimant can perform?

*Id.* at 724-25. Each step is potentially dispositive. 20 C.F.R. §§ 404.1520(a)(4), 416.920(a)(4). If

the analysis continues beyond step three, the ALJ must evaluate medical and other relevant

evidence to assess and determine the claimant's "residual functional capacity" (RFC).

The claimant bears the burden of proof at steps one through four. *Bustamante v.*

*Massanari*, 262 F.3d 949, 953 (9th Cir. 2001); *see also Tackett v. Apfel*, 180 F.3d 1094, 1098

(9th Cir. 1999). The Commissioner bears the burden of proof at step five. *Tackett*, 180 F.3d at 1100. At step five, the Commissioner must show that the claimant can perform other work that exists in significant numbers in the national economy, "taking into consideration the claimant's residual functional capacity, age, education, and work experience." *Id.*; *see also* 20 C.F.R. §§ 404.1566, 416.966 (describing "work which exists in the national economy"). If the Commissioner fails to meet this burden, the claimant is disabled. 20 C.F.R. §§ 404.1520(a)(4)(v), 416.920(a)(4)(v). If, however, the Commissioner proves that the claimant is able to perform other work existing in significant numbers in the national economy, the claimant is not disabled. *Tackett*, 180 F.3d at 1099; *see Bustamante*, 262 F.3d at 954.

## C.  The ALJ's Decision

At step one, the ALJ found that Plaintiff had not engaged in substantial gainful activity since October 20, 2017, the application date. AR 635. At step two, the ALJ found that Plaintiff had the following severe impairments: obesity, fibromyalgia, bilateral rotator cuff syndrome, chronic obstructive pulmonary disease in a smoker, panic disorder, posttraumatic stress disorder, borderline personality disorder, bipolar disorder, major depressive disorder, and cannabis dependence. *Id*. At step three, the ALJ determined that none of the impairments, either individually or in combination, met or medically equaled the severity of one of the listed impairments in 20 C.F.R. § Part 404, Subpart P, Appendix 1. *Id*.

The ALJ next determined Plaintiff's RFC and found that Plaintiff could perform light work as defined in 20 C.F.R. § 416.967(b) except she can only "frequently climb ladders, ropes, and scaffolds, frequently crawl, and frequently reach overhead bilaterally. [Plaintiff] would need to avoid concentrated exposure to pulmonary irritants such as fumes, dusts, gases, etc. She would need to avoid concentrated exposure to workplace hazards such as heights and heavy machinery." AR 637. Plaintiff would also be "able to understand, remember, carry out, and

PAGE 5 – OPINION AND ORDER

persist at simple, routine, repetitive tasks, make simple work-related decisions, and perform work

with few if any changes in the workplace, no assembly-line pace work. She would be able to

have occasional coworker contact with no public contact." AR 637-38.

Based on the limitations in Plaintiff's RFC, the ALJ found at step four that Plaintiff could

not perform any past relevant work. AR 649. At step five, relying on testimony of the VE, and

considering Plaintiff's age, education, work experience, and RFC, the ALJ concluded that

Plaintiff could perform jobs that exist in significant numbers in the national economy. *Id.* These

jobs included marker (137,000 jobs in the national economy), office helper (11,000 jobs in the

national economy), and small parts assembler I (16,000 jobs in the national economy). AR 650.

The ALJ thus concluded that Plaintiff was not disabled. *Id.*

## DISCUSSION

Plaintiff argues that the ALJ erred in her decision in two ways. First, Plaintiff asserts that

the ALJ erred by failing to provide legally sufficient reasons supported by substantial evidence in

rejecting the medical opinions of Dr. Stephanie Casey, D.O. and Dr. Kenneth P. Butters, M.D.

Second, Plaintiff argues the ALJ failed to provide clear and convincing reasons supported by

substantial evidence when discounting Plaintiff's subjective symptom testimony.

**A.  Medical Opinions**

Plaintiff filed her application on October 20, 2017. For claims filed on or after March 27,

2017, Federal Regulation 20 C.F.R. § 416.920c governs how an ALJ must evaluate medical

opinion evidence. *See* Revisions to Rules Regarding the Evaluation of Medical Evidence, 82

Fed. Reg. 5844 (Jan. 18, 2017). Under these new regulations, ALJs no longer "weigh" medical

opinions, but rather determine which are most "persuasive." 20 C.F.R. § 416.920c(a)-(b). The

new regulations eliminate the hierarchy of medical opinions and state that the agency does not

defer to any particular medical opinions, even those from treating sources. *Id.*; *see also Woods v.*

*Kijakazi*, 32 F.4th 785, 792 (9th Cir. 2022) ("The revised social security regulations are clearly irreconcilable with our caselaw according special deference to the opinions of treating and examining physicians on account of their relationship with the claimant."). Under the new regulations, the ALJ primarily considers the "supportability" and "consistency" of the opinions in determining whether an opinion is persuasive. 20 C.F.R. § 416.920c(c). Supportability is determined by whether the medical source presents explanations and objective medical evidence to support his or her opinion. 20 C.F.R. § 416.920c(c)(1). Consistency is determined by how consistent the opinion is with evidence from other medical and nonmedical sources. 20 C.F.R. § 416.920c(c)(2).

An ALJ may also consider a medical source's relationship with the claimant by looking to factors such as the length of the treatment relationship, the frequency of the claimant's examinations, the purpose of the treatment relationship, the extent of the treatment relationship, and whether there is an examining relationship. 20 C.F.R. § 416.920c(c)(3). An ALJ is not, however, required to explain how he or she considered these secondary medical factors, unless he or she finds that two or more medical opinions about the same issue are equally well-supported and consistent with the record but not identical. 20 C.F.R. § 416.920c(b)(2)-(3). The regulations require ALJs to "articulate . . . how persuasive [they] find all of the medical opinions" and "explain how [they] considered the supportability and consistency factors." 20 C.F.R. § 416.920c(b). The Court must, moreover, continue to consider whether the ALJ's analysis has the support of substantial evidence. *See* 42 U.S.C. § 405(g); *see also Woods*, 32 F.4th at 792 ("Our requirement that ALJs provide 'specific and legitimate reasons' for rejecting a treating or examining doctor's opinion, which stems from the special weight given to such opinions is likewise incompatible with the revised regulations. . . . Even under the new

regulations, an ALJ cannot reject an examining or treating doctor's opinion as unsupported or inconsistent without providing an explanation supported by substantial evidence." (citation omitted)).

### 1. Dr. Stephanie Casey, D.O.

Between February 18, 2016, and December 29, 2017, Plaintiff's family practitioner treated her on nearly 30 occasions for various health issues. AR 437-509. Dr. Casey did not provide a physical health residual functional capacity assessment on Plaintiff's behalf.

On November 2, 2016, before the alleged onset date, Dr. Casey recommended in her treatment notes that Plaintiff should not lift, push, or pull with her left upper extremity, because she was "awaiting orthopedic consult for likely surgical intervention." AR 482. In a previous visit on September 2nd, Dr. Casey performed a physical examination of Plaintiff's left shoulder and found "decreased range of motion (limited in forward flexion as well as abduction), tenderness (diffuse) and decreased strength (internal and external rotation 4/5)." AR 484. The ALJ concluded that Dr. Casey's limitations were not persuasive because they were "poorly supported" by her clinical findings and inconsistent with Dr. Butters' opinion. AR 648. The ALJ also reasoned that because Plaintiff had not sought diagnostic imaging or orthopedic evaluation for her left shoulder since 2017, the "severity of the opined limitation" was inconsistent with Dr. Casey's limitations. *Id*.

An ALJ may discount a medical source opinion if it is not supported by her treatment notes. *See Ford v. Saul*, 950 F.3d 1141, 1154 (9th Cir. 2020) (stating that an ALJ may discount medical opinions that are "inadequately supported by clinical findings" (quoting *Thomas v. Barnhart*, 278 F.3d 947, 957 (9th Cir. 2002))); 20 C.F.R. § 404.1520c(c)(1) (including among the "supportability" factors "the objective medical evidence and supporting explanations presented by a medical source . . . to support his or her medical opinion(s)").

PAGE 8 – OPINION AND ORDER

Substantial evidence supports the ALJ's conclusion that Dr. Casey's records do not contain clinical findings sufficient to support the severe limitations contained in her treatment notes regarding Plaintiff's left shoulder. After Plaintiff's visit with Dr. Casey where she placed the lifting restrictions, Plaintiff began receiving steroid injections to address the issue. On March 17, 2017, Dr. Casey wrote that Plaintiff "got steroid injection in left shoulder and is feeling somewhat better." AR 459. The next visit Plaintiff had on April 28, 2017, Dr. Casey decided it was best for a specialist to address Plaintiff's left shoulder issues and stated:

> [I] [a]dvised that as her family practitioner I would defer to Dr. Butters, her orthopedic surgeon, in regards to the presence of the labral tear and preferred treatment options . . . [I] overall feel that her specialty team, Dr. Butters and Dr. Stowell, are more qualified than myself to make these determinations. She was referred to orthopedics by myself when she failed basic conservative measures which I believe would be strongly preferred to any surgical options for her shoulder.

AR 456.

At the following visit with Dr. Casey, after four months without treatment, Plaintiff indicated that she wanted to "wait on [physical therapy] right now because she has to move this month" and requested another steroid injection but indicated no worsening of her condition. AR 452. At Plaintiff's July 13, 2017, visit with Dr. Casey she reported that she is "too busy for physical therapy at this time" and that it makes her pain worse, but at the same time wanted to "pursue further treatment of her shoulders prior to consideration of long-term disability." AR 451. During her physical examination at this visit, Dr. Casey noted "[a]ctive shoulder [range of motion] equal bilaterally, limited to 100 degrees of forward flexion and 150 degrees of abduction. Diffusely tender to palpation bilaterally without swelling." *Id.*

The rest of Plaintiff's 2017 visits with Dr. Casey address unrelated health issues, and Plaintiff fails to mention her left shoulder aside from indicating her desire to follow up with

orthopedics. AR 446. Even considering Plaintiff's initial visit with Dr. Casey, the physical examination findings do not support such severe restrictions that would extend past 2016. The Court agrees with the ALJ that Dr. Casey's opinion was "in anticipation of possible left shoulder surgery," AR 648, *see* AR 482, although surgery wound up being unnecessary. *See* AR 280. At the very least, Dr. Casey's opinion was made in anticipation of orthopedic evaluation, as she felt Plaintiff's specialty team was "more qualified than [herself]" to make determinations on her shoulder issue and wanted to follow up with Plaintiff after the evaluation. AR 456, 482.

An ALJ also may reject medical source opinion evidence that is inconsistent with other medical opinions of record, or inconsistent with the objective medical evidence. *See Tommasetti v. Astrue*, 533 F.3d 1035, 1041 (9th Cir. 2008) (concluding that the ALJ did not err in rejecting medical opinion that was inconsistent with objective medical evidence and another medical opinion of record); 20 C.F.R. § 404.1520c(c)(2) (explaining that the "consistency" prong evaluates how consistent an opinion "is with the evidence from other medical sources"). The ALJ found that Dr. Casey's limitations conflicted with the clinical findings on physical exam found by Dr. Butters. AR 648. The ALJ cited Dr. Butters' physical examinations, which showed that Plaintiff displayed "good range of motion with her left upper extremity, and pain only at the extremes of motion. She had good cuff strength, negative labrum test, and no bicep tenderness." *Id.* (citing AR 280, 284, 288). The ALJ found Dr. Butters' unremarkable physical examination findings to be at odds with Dr. Casey's opinion that Plaintiff should not lift with her left arm at all. The ALJ was within her discretion to determine that there was an inconsistency between the providers' treatment notes. Plaintiff cites other evidence in the record that she argues supports Dr. Casey's limitations. The ALJ's interpretation is a rational reading of the record, however,

and thus must be upheld. *See Burch*, 400 F.3d at 679 ("Where evidence is susceptible to more than one rational interpretation, it is the ALJ's conclusion that must be upheld.").

### 2. Dr. Kenneth Butters, M.D.

Between December 5, 2016, and March 16, 2017, Plaintiff's orthopedist Dr. Butters treated her on three occasions. AR 285-89 (December 5, 2016), 282-84 (January 30, 2017), 278-81 (March 16, 2017). Dr. Butters did not provide a physical health residual functional capacity assessment on Plaintiff's behalf.

For each of these visits, Dr. Butters prepared a Work Status Report that Plaintiff is released to work with the only restriction of "[n]o lifting with left shoulder." AR 290-92. During Dr. Butters' first visit with Plaintiff, Dr. Butters' treatment notes reveal that Plaintiff "does not have obvious evidence of [a] rotator cuff tear, and at age 41, I suspect this is an impingement bursitis type problem. I did inject subacromial space today and sent her with some additional therapy instructions to PT Umpqua[.]" AR 288. Dr. Butters' physical examination of Plaintiff indicated that there was "[p]ain at the extremes of motion. Very positive internal rotation test. Good cuff strength. Positive Jobe's sign. No biceps tenderness is present." *Id*. At Plaintiff's January 30, 2017 visit, Dr. Butters observed that Plaintiff's "motion today is good," with "some pain present at the extremes. Positive internal rotation tests, and positive impingement sign. Tests for labrum are negative." AR 284. An MRI was ordered so Dr. Butters could evaluate Plaintiff's left shoulder. *Id*.

Before receiving Plaintiff's MRI results, Dr. Butters was considering decompression surgery for Plaintiff's left shoulder. *Id*. He also instructed Plaintiff to participate in physical therapy, which she declined. *Id*. After receiving the MRI results at Plaintiff's final visit with him, Dr. Butters decided against surgery because the results showed "no evidence of [a] full-thickness tear[,]" as well as no "labrum complex tears[.]" AR 278. Dr. Butters wanted to "avoid

decompression on this patient" and injected the "subacromial space" in her left shoulder at that visit. AR 280. He also suggested Plaintiff "continue a stretching exercise program" with the "same work release of no overhead use." *Id*. Plaintiff's final physical examination done by Dr. Butters revealed a "mildly positive Finkelstein on both sides with some pain behavior. Shoulder motion is about 145 active, 160 passive with pain, 70 of external rotation, T10 internal rotation. Cuff contraction with pain at the extremes and with cuff strength testing. Positive Jobe test is present." *Id.*

The ALJ concluded that Dr. Butters' limitations were not persuasive because his clinical findings on physical exam do not support his work limitations and were inconsistent with Dr. Casey's treatment notes. AR 648. The ALJ also reasoned that Dr. Butters' clinical findings on physical exam are more consistent with "an ability to perform overhead reaching, climbing of ladders, ropes or scaffolds, and crawling on only a frequent basis, rather than no lifting, pushing, or pulling with the left arm at all." AR 648. Plaintiff takes issue with the ALJ's conclusion and argues that this part of the RFC is not supported by any evidence whatsoever, and that judges may not substitute their own opinion for that of a physician's. This mischaracterizes the ALJ's opinion.

First, Dr. Butters proffered an opinion that Plaintiff should not lift with her left arm at all. The ALJ determined, however, that Dr. Butters' work release with a "no lifting" limitation whatsoever was undermined by his physical examination findings describing Plaintiff having good range of motion with pain only at the extremes with good rotator cuff strength, as well as the MRI results showing no full-thickness labral tear or any labrum complex tears. AR 648 (citing 280, 284, 288). The ALJ was within her discretion to determine this was an internal inconsistency.

PAGE 12 – OPINION AND ORDER

Second, the ALJ supported the reaching part of Plaintiff's RFC with evidence from the earlier administrative medical findings of Drs. Thomas Davenport, M.D. and Lloyd Wiggins, M.D., who both reviewed the treatment notes of Drs. Casey and Butters. AR 646-47 (citing AR 87-88, 73-74). Dr. Wiggins acknowledged Plaintiff's "bilateral [degenerative joint disease] of the shoulders" but found her "physical exams are [within normal limits]." AR 89. Dr. Davenport found that Plaintiff could lift and carry 20 pounds occasionally and 10 pounds frequently. AR 74. Dr. Davenport also found that Plaintiff could reach overhead bilaterally "freq[uently] but not constantly [due to] bilat[eral] shoulder impairment." *Id*. The ALJ used what parts of the record that were available, as the record is devoid of Plaintiff's left shoulder issue after 2017, which Plaintiff concedes. Like the state agency physicians, the ALJ concluded that Dr. Butters' physical examinations of Plaintiff show that she has the ability to use her left arm in some capacity, rather than none at all. Therefore, it was a rational reading of the evidence that Dr. Butters' limitations were not consistent with or supported by the record. Although Plaintiff's interpretation of the evidence may also be rational, when the evidence is "susceptible to more than one rational interpretation," the ALJ's decision must be affirmed. *See Smartt v. Kijakazi*, 53 F.4th 489, 494 (9th Cir. 2022). Accordingly, there is substantial evidence supporting the ALJ's evaluation of Dr. Butters' limitations.

**B. Plaintiff's Subjective Symptom Testimony**

A claimant "may make statements about the intensity, persistence, and limiting effects of his or her symptoms." Social Security Ruling (SSR) 16-3p, *available at* 2017 WL 5180304, at *6 (Oct. 25 2017). There is a two-step process for evaluating a claimant's testimony about the severity and limiting effect of the claimant's symptoms. *Vasquez v. Astrue*, 572 F.3d 586, 591 (9th Cir. 2009). "First, the ALJ must determine whether the claimant has presented objective medical evidence of an underlying impairment 'which could reasonably be expected to produce

the pain or other symptoms alleged.'" *Lingenfelter v. Astrue*, 504 F.3d 1028, 1036 (9th Cir.

2007) (quoting *Bunnell v. Sullivan*, 947 F.2d 341, 344 (9th Cir. 1991) (en banc)). When doing so,

"the claimant need not show that her impairment could reasonably be expected to cause the

severity of the symptom she has alleged; she need only show that it could reasonably have

caused some degree of the symptom." *Smolen v. Chater*, 80 F.3d 1273, 1282 (9th Cir. 1996).

"Second, if the claimant meets this first test, and there is no evidence of malingering, 'the

ALJ can reject the claimant's testimony about the severity of her symptoms only by offering

specific, clear and convincing reasons for doing so.'" *Lingenfelter*, 504 F.3d at 1036 (quoting

*Smolen*, 80 F.3d at 1281). It is "not sufficient for the ALJ to make only general findings; he must

state which pain testimony is not credible and what evidence suggests the complaints are not

credible." *Dodrill v. Shalala*, 12 F.3d 915, 918 (9th Cir. 1993). Those reasons must be

"sufficiently specific to permit the reviewing court to conclude that the ALJ did not arbitrarily

discredit the claimant's testimony." *Orteza v. Shalala*, 50 F.3d 748, 750 (9th Cir. 1995) (citing

*Bunnell*, 947 F.2d at 345-46).

Consideration of subjective symptom testimony "is not an examination of an individual's

character," and requires the ALJ to consider all of the evidence in an individual's record when

evaluating the intensity and persistence of symptoms. SSR 16-3p, 2017 WL 5180304, at *2. The

Commissioner recommends that the ALJ examine "the entire case record, including the objective

medical evidence; an individual's statements about the intensity, persistence, and limiting effects

of symptoms; statements and other information provided by medical sources and other persons;

and any other relevant evidence in the individual's case record." *Id*. at *4. The Commissioner

further recommends assessing: (1) the claimant's statements made to the Commissioner, medical

providers, and others regarding the claimant's location, frequency and duration of symptoms, the

impact of the symptoms on daily living activities, factors that precipitate and aggravate symptoms, medications and treatments used, and other methods used to alleviate symptoms; (2) medical source opinions, statements, and medical reports regarding the claimant's history, treatment, responses to treatment, prior work record, efforts to work, daily activities, and other information concerning the intensity, persistence, and limiting effects of an individual's symptoms; and (3) non-medical source statements, considering how consistent those statements are with the claimant's statements about his or her symptoms and other evidence in the file. *See id.* at *7-8.

The ALJ's decision relating to a claimant's subjective testimony may be upheld overall even if not all the ALJ's reasons for discounting the claimant's testimony are upheld. *See Batson*, 359 F.3d at 1197. The ALJ may not, however, discount testimony "solely because" the claimant's symptom testimony "is not substantiated affirmatively by objective medical evidence." *Robbins*, 466 F.3d at 883.

In making her finding, the ALJ offered the boiler plate statement that Plaintiff's "statements concerning the intensity, persistence and limiting effects of these symptoms are not entirely consistent with the medical evidence and other evidence in the record for the reasons explained in this decision." AR 639. The ALJ then explained that she discounted Plaintiff's testimony because of her noncompliance and failure to pursue treatment, and that the objective medical evidence paired with her activities of daily living failed to support her alleged limitations. AR 639-643, 646. Plaintiff takes issue with the first two reasons.

### 1. Noncompliance and Failure to Seek Treatment

The amount of treatment is "an important indicator of the intensity and persistence of [a claimant's] symptoms." 20 C.F.R. § 416.929(c)(3). Thus, failure to seek treatment is a basis on which to deny disability. 20 C.F.R. § 416.930(b). If, however, the claimant has a good reason for

not seeking treatment, failure to seek treatment is not a proper basis for rejecting the claimant's

subjective symptoms. *See* 20 C.F.R. § 416.930(c); *see also Gamble v. Chater*, 68 F.3d 319, 321

(9th Cir. 1995) ("We certainly agree with all the other circuits that a disabled claimant cannot be

denied benefits for failing to obtain medical treatment that would ameliorate his condition if he

cannot afford that treatment."). Thus, an ALJ must consider a claimant's reasons for failing to

adhere to recommended treatment before making an adverse credibility finding. *See Smolen*, 80

F.3d at 1284; *see also* SSR 16-3p, 2017 WL 5180304, at *9 (explaining that an ALJ "may need

to contact the individual regarding the lack of treatment or, at an administrative proceeding, ask

why he or she has not complied with or sought treatment in a manner consistent with his or her

complaints" and that the Commissioner "will not find an individual's symptoms inconsistent

with the evidence in the record on this basis without considering possible reasons he or she may

not comply with treatment or seek treatment consistent with the degree of his or her

complaints").

      Plaintiff testified that during the relevant period she experienced pain in her left shoulder

that prevents her from lifting more than 5 pounds, and if she does, her shoulder "gives away and

it starts popping and aching." AR 667. At her 2023 hearing, Plaintiff denied that she is getting

any treatment for her shoulders when asked by the ALJ. AR 665. When the ALJ again asked her

if she is doing anything to improve the situation with her shoulders, she said she has "had

physical therapy in the past" and is trying to "strengthen it and keep it moving so it doesn't lock

up." AR 668. The ALJ found in her review of the medical record that Plaintiff's "diagnostic and

orthopedic treatment [is] limited to 2016 and 2017. [Plaintiff] did not pursue the [2018]

orthopedic referral." AR 642. The ALJ found Plaintiff's "frequency and extent of the treatment

sought by [Plaintiff] inconsistent with the degree of her subjective complaints." *Id*. The ALJ

reasoned:

> While [Plaintiff] testified to bilateral shoulder pain and near
> inability to use her left arm, she has not sought further steroid
> injections for either shoulder, nor any further evaluation or
> specialist treatment since about five years before the 2023 hearing.
> Further, when she established care with a new primary care
> provider in 2020, she reported myalgias on the review of systems,
> but made no specific complaint regarding her shoulders.

*Id*. (citations omitted).

Plaintiff argues that she was told by her providers that there was nothing more they could

do for her left shoulder. AR 641. She also claims that her orthopedist is to blame for the lack of

follow up and cites page 463 of the record for support. After review, the Court finds that

Plaintiff's assertion is a mischaracterization of the record. Dr. Casey noted that "Dr. Butters has

not called her back with follow-up plan." AR 463. This was noted on February 23, 2017,

however, and Plaintiff had a follow up appointment with Dr. Butters shortly after on March 16,

2017. AR 278-81. Despite Plaintiff's claim that she had not seen Dr. Butters in a while because

"he hasn't really done much for me since I started seeing him[,]" AR 50, Dr. Butters gave

Plaintiff a subacromial injection in her left shoulder at that March 2017 visit and recommended

she attend physical therapy, which she declined. AR 278-80. Notably, Plaintiff's most recent

medical records, AR 857, 862, 864, 879, show that when she established care with a new

primary care physician, she failed to mention her allegedly incapacitating left shoulder pain, or

that she could not "do much with [her] left arm" due to her "damaged" left shoulder. AR 49. The

medical record does not reflect that Plaintiff sought care for left shoulder pain or mobility

problems after 2017, thus it has been more than six years without care since the alleged onset

date.

In line with the Appeals Council remand order, the ALJ considered Plaintiff's explanation for her failure to seek and comply with treatment recommendations. The ALJ acknowledged the Appeal Council's finding that "there is evidence that left shoulder treatment has been hindered by aggravated symptoms and limited opinions[,]" but she ultimately found that Plaintiff did "not exhaust[] her treatment options for her left shoulder." AR 641-42. First, the ALJ found Plaintiff's statement that her providers told her nothing could be done to improve her left shoulder to be unsupported. AR 641. The ALJ found that none of Plaintiff's providers explicitly withdrew care because there was nothing more they could do, *id.*, as Plaintiff alleges, AR 50. Instead, the ALJ found Plaintiff's allegation to be "inconsistent with what her doctor actually wrote." AR 641. The ALJ cited Dr. Richard Jany's September 2017 treatment notes that reveal "I have nothing to offer the patient on her left shoulder chronic pain syndrome. I do not operate on labral tears, and it would be best left to the shoulder experts." AR 526-27. Plaintiff did not see Dr. Jany again after that and instead sought care from Dr. Casey, who noted that Dr. Jany suggested Dr. Casey refer Plaintiff back to see Dr. Butters. AR 609-10. Dr. Casey made the referral to orthopedics on February 5, 2018. *Id.* As the ALJ acknowledged, however, Plaintiff never pursued that referral. AR 642. In compliance with *Smolen*, the ALJ considered Plaintiff's reasons for failing to adhere to recommended treatment before discounting Plaintiff's testimony, but still found Plaintiff's reasons to be inconsistent with the degree of complaint. 80 F.3d at 1284.

Plaintiff claims that she has not pursued physical therapy for her left shoulder issues because such treatment has not worked for her and has caused significant pain. She cites several instances where she was agreeable to engaging in physical therapy for her *right* shoulder even though such treatment caused pain in her *left* shoulder. *See* AR 315, 321-23, 333, 438, 446, 449.

The ALJ acknowledged this issue and stated "it is true that [Plaintiff] told a care provider that she did not wish to pursue recommended physical therapy or occupational therapy for her right shoulder because this had aggravated her left shoulder symptoms in the past[.]" AR 641. Nevertheless, the ALJ found that "[Plaintiff]'s reasons for declining physical therapy do not always relate to past experience[s] of aggravated pain." AR 642. The ALJ cited treatment notes where she told Dr. Casey that she "has been really busy, [and] has not been able to make it over to physical therapy or [occupational therapy]." AR 450. The ALJ also cited an instance where Plaintiff told Dr. Casey "she cannot do physical therapy until after the first of the year because of upcoming birthdays." AR 442. Plaintiff argues that the ALJ does not explain how these "isolated" explanations are relevant to Plaintiff's subjective complaints of how physical therapy has made her pain worse. The ALJ, however, was within her discretion to consider Plaintiff's own proffered reasons for her disengagement with physical therapy that directly contradict her asserted reasons. The record supports the ALJ's conclusion. AR 308-09, 321, 469. It was therefore reasonable for the ALJ to discount's Plaintiff's testimony based on the combination of her failure to seek and follow treatment for her left shoulder during this time.

### 2. Objective Medical Evidence

An ALJ may consider the lack of corroborating objective medical evidence as a "relevant factor in determining the severity of the claimant's" alleged symptoms. *Rollins v. Massanari*, 261 F.3d 853, 857 (9th Cir. 2001). The ALJ may not, however, "discredit the claimant's testimony as to subjective symptoms merely because they are unsupported by objective evidence." *Berry v. Astrue*, 622 F.3d 1228, 1234 (9th Cir. 2010) (quoting *Lester v. Chater*, 81 F.3d 821, 834 (9th Cir. 1995)); *see also Robbins*, 466 F.3d at 883; 20 C.F.R. § 416.929(c)(2) (noting that the Commissioner "will not reject your statements about the intensity and persistence of your pain or other symptoms or about the effect your symptoms have

on your ability to work solely because the available objective medical evidence does not

substantiate your statements").

Concerning Plaintiff's testimony about her left shoulder limitations, the ALJ reasonably

considered the objective medical record as a relevant factor in discounting these allegations.

AR 642. At the hearing and in her function report, Plaintiff discussed how her left shoulder

impairment made it difficult to do much, such as vacuum, with her left arm because it gives out

and starts popping and aching. AR 49, 667, 206. The ALJ juxtaposed these claimed limitations

with physical examination findings. AR 642 (citing several examinations). These included

records showing good range of motion with pain only at the extremes. AR 284, 288. Plaintiff

also exhibited good cuff strength, a negative labrum test, and a mildly positive Finkelstein test on

both sides. AR 280. At her March 2017 physical examination with Dr. Butters, Plaintiff's

shoulder motion was 145 degrees with active motion, 160 with passive motion resulting in pain,

and 70 degrees with external rotation. *Id*. The cited examinations also showed Plaintiff's bilateral

upper extremity strength as 4 out of 5 in strength with wrist extension, finger/thumb opposition,

and finger abduction. AR 316. The cited 2017 physical examination included Plaintiff's grip

strength at 56 pounds in the right hand and 50 in the left, with key pinch testing at 15 pounds in

the right hand and 11 pounds in the left hand. AR 531. The ALJ explained that this demonstrates

an improvement in Plaintiff's strength compared with similar testing that was done in 2016.[2]

AR 642. The ALJ concluded that the physical examination findings were inconsistent with

Plaintiff's 2019 testimony that she can barely use her left arm at all. Lastly, the ALJ found that

the physical examination findings warranted a limitation in overhead reaching rather than a

---

[2] Plaintiff's testing in 2016 showed Grip Strength Left: 32, Right: 40; Pinch Strength Left: 12, Right 18. AR 537.

complete prohibition of reaching altogether. *Id*. Taken together, these countervailing findings amount to substantial evidence supporting the ALJ's decision to discount Plaintiff's testimony about her limitations from her left shoulder impairment because they were unsupported by the objective record evidence.

## CONCLUSION

The Court AFFIRMS the Commissioner's decision that Plaintiff was not disabled.

**IT IS SO ORDERED**.

DATED this 7th day of June, 2024.

/s/ *Michael H. Simon*
Michael H. Simon
United States District Judge